IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DAWN E. SAMPLES, | ) | Civil No. 09-6152-JO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

Alan S. Graf
ALAN STUART GRAF P.C.
P. O. Box 98
Summertown, TN  38483

  Attorney for Plaintiff

Adrian L. Brown
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204

  David R. Johnson
  SOCIAL SECURITY ADMINISTRATION
  Office of the General Counsel
  701 Fifth Avenue
  Suite 2900 M/S 901
  Seattle, WA  98104

   Attorneys for Defendant

JONES, Judge:

  Claimant Dawn Samples seeks judicial review of a final decision of the Commissioner of Social Security denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI").  This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  Following a careful review of the record, the court concludes that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and must be affirmed.

## ADMINISTRATIVE HISTORY

  Claimant filed applications for DIB and SSI on February 19, 2004, alleging an inability to work since September 1, 2002.  The applications were denied initially and on reconsideration, and by an Administrative Law Judge ("ALJ") on March 17, 2006.  Following claimant's appeal, on July 21, 2006, the Appeals Council remanded the case for further proceedings.  At a hearing on January 8, 2007, claimant, represented by counsel, appeared and testified, as did a vocational expert ("VE").  Claimant's applications were again denied, and again she appealed.  The Appeals Council allowed review, and on June 1, 2007, again remanded the case for further proceedings.

  In the most recent hearing, held on November 16, 2007, claimant, represented by counsel, appeared and testified, as did the VE.  On April 4, 2008, the ALJ issued a decision denying

claimant's applications. The ALJ's decision became the final decision of the Commissioner on April 1, 2009, when the Appeals Council declined claimant's request for review.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylizki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ first determined that claimant met the insured status requirements of the Social Security Act through September 30, 2007. The ALJ then employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

In the first step of the evaluation, the ALJ found that claimant had not engaged in substantial gainful activity since September 1, 2002, her alleged onset date. Second, the ALJ found that claimant had a severe impairment, as follows:

> fibromyalgia, mild inflammatory arthritis, chronic pain syndrome, history of edema, history of right index finger PIP joint fusion, history of anxiety/panic, possible post-traumatic stress disorder, depression, somatization, and possible personality disorder.

3 - OPINION AND ORDER

Tr. 24.  Third, the ALJ determined that claimant's impairments did not meet or medically equal any impairment in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P., App. 1.  Tr. 26-28.

At the fourth step of the evaluation, the ALJ determined that claimant retained the residual functional capacity to perform light work, with the following additional restrictions:

> [L]ifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently.  Additionally, the claimant is found to be able to sit and stand/walk each for at least 30 minutes at a time and at least 6 hours during an 8-hour workday.  However, an additional restriction to the RFC is the claimant's need for an opportunity to change position.
>
> * * *
>
> The claimant is limited from rapid manipulation, such a[s] typing in a rapid manner.  Also, she is limited for ongoing manipulation that is both repetitive and forceful. * * *
>
> The claimant's mental impairments have added restrictions to the claimant's residual functional capacity.  Specifically, the Administrative Law Judge finds the claimant is unable to consistently follow detailed or complex instructions and unable to consistently interact appropriately with the public unless contact is occasional or superficial.
>
> As noted in the mental residual functional capacity assessment by Drs. Rethinger and Anderson, the claimant was able to understand and remember simple tasks, but she would have a difficult time with detailed tasks.  As she had anxiety in large crowds, the claimant was seen by these doctors as an individual who should not work with the general public in other than a small setting.  Dr. James Wahl found she was predisposed to oversensitivity and anger in response to criticism in the workplace.  Additionally, Dr. Wahl saw the claimant's pervasive distrust of others as a difficulty in having the claimant in prolonged or close contact with coworkers.
>
> Additionally, the claimant is unable to consistently engage in ongoing cooperative teamwork endeavors, to maintain close concentration for extended periods of time, or to tolerate rapid or unexpected changes in the work setting.  She is limited from ongoing urgent rapid pace to satisfy multiple competing demands. [C]laimant would do best in an environment that did not have frequent or complex changes.

Tr. 28-29. In making that determination, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment."  Tr. 29.

The ALJ next determined, based on the VE's testimony, that claimant was unable to perform her any of her past relevant work as a food server, housekeeper, or horticultural technician.  Tr. 32.  At the fifth step of the evaluation, the ALJ found, again based on the VE's testimony, that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including laminating machine operator, bakery worker, and groover stripper operator.  Tr. 33.  Consequently, the ALJ found that claimant was not disabled at any time from September 1, 2002, through the date of the ALJ's decision.  Tr. 34.

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record, which the ALJ thoroughly summarized.  I will therefore not repeat the evidence except as necessary to explain my opinion.

## DISCUSSION

Claimant makes several arguments in favor of reversal. These are:  (1) the ALJ's vocational hypothetical question failed to include all of limitations that the ALJ included in the final RFC; (2) the ALJ failed to consider the combined effect of claimant's mental and physical

impairments; (3) the VE's testimony did not satisfy the Commissioner's burden at step five; and (4) the ALJ failed to give proper reasons for discounting claimant's credibility.

I address these arguments in turn.

1.   The Sufficiency of the ALJ's Vocational Hypothetical Question

Claimant contends that the ALJ's decision is not supported by substantial evidence because, in essence, the ALJ did not include certain of Dr. James Wahl's findings in the vocational hypothetical posed to the VE. Specifically, claimant points to the ALJ's RFC, in which he included the statement "Dr. James Wahl found she was predisposed to oversensitivity and anger in response to criticism in the workplace." Tr. 28. Claimant also points to two check-the-box findings included in Dr. Wahl's Mental Residual Function Capacity Report, Tr. 410, in which Dr. Wahl marked claimant as "moderately limited" or "markedly limited" in two areas, "ability to accept instructions and respond appropriately to criticism from supervisors," and "ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes."

As relevant, the ALJ's questioning of the VE was as follows:

> Q    She is 52 and she has a GED and work as you just described. Okay. She's limited from lifting, carrying, pushing or pulling more than 10 pounds frequently with an occasional 20 pound maximum. She is limited from ongoing manipulation, that is both repetitive and forceful and she requires an opportunity to change position. She can sit, stand or walk a half hour at a time each and at least six hours each in eight.
>
> * * *
>
> Q    And I did have down here that she was also limited from rapid manipulation such as typing in a rapid manner.
>
> A    Okay.

6 - OPINION AND ORDER

> Q    She's unable to consistently follow detailed or complex instructions. She's also unable to consistently interact appropriately with the public unless that contact is occasional or superficial. She is unable to consistently engage in ongoing cooperative teamwork endeavors. She is unable to maintain close concentration for extended periods. She is unable to tolerate rapid or unexpected changes in the work setting and she is limited from ongoing urgent, rapid pace to satisfy multiple competing demands. I hope that's clear.

Tr. 749-50.

Thus, the issue is whether the ALJ's hypothetical adequately captures the restrictions supported by the medical evidence and set forth in his RFC. In this regard, I agree with the Commissioner that the ALJ accommodated Dr. Wahl's opinion by including several restrictions designed to limit situations that might subject claimant to criticism in the workplace. As the Ninth Circuit explained in Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), "an ALJ's assessment of a claimant adequately captures restrictions . . . where the assessment is consistent with restrictions identified in the medical testimony." In other words, the ALJ is not required to parrot the statements on the check-the-box form, nor is the ALJ required to quote medical opinions in forming the hypothetical question; rather, the ALJ's question is adequate if it translates the claimant's medical condition into concrete restrictions, which the ALJ did in this case.[1]

Consequently, I find no error in the ALJ's hypothetical question.[2]

---

[1] I also agree with the Commissioner that counsel's question to the VE concerning claimant's potential response to criticism in the workplace was much more extreme than Dr. Wahl's description of her as "predisposed" to oversensitivity and anger. Compare Tr. 407 (Dr. Wahl's statement) with Tr. 728 (transcript of second hearing).

[2] Claimant suggests, at page 26 of her Opening Brief, that a statement that a person is "predisposed to oversensitivity and anger in response to criticism in the workplace" "leads to a finding of disability," a remarkable proposition this court finds to be an overstatement of the
(continued...)

7 - OPINION AND ORDER

2.   **The ALJ's Consideration of the Combined Effect of Claimant's Impairments**

Claimant next contends that the ALJ failed to consider her mental and physical impairments in combination. This argument is unsupported and lacks merit. See Tr. 28:

> In considering the claimant's impairments in combination, the Administrative Law Judge finds that they are not equal in severity to any listing. The claimant does not have an impairment that meets or equals a medical listing in Appendix 1 to the Regulations, whether considered alone or in combination with other impairments.

3.   **The Sufficiency of the VE's Testimony**

The VE identified three jobs claimant could perform: (1) laminating machine operator -- 200 positions in Oregon and 140,000 positions nationally; (2) bakery worker -- 200 positions in Oregon and 176,000 positions nationally; and (3) groover stripper operator -- 160 positions in Oregon and 40,000 positions nationally. Tr. 33, 750-51. Claimant challenges the sufficiency of that testimony, contending that the jobs the VE identified do not exist in the "significant numbers" the regulations require because only 560 of the total exist in Oregon.

Claimant admits, as she must, that there is no bright line test as to what constitutes a significant number of jobs. See Barker v. Secretary of Health & Human Services, 882 F.2d 1474, 1478 (9th Cir. 1989) ("This Circuit has never clearly established the minimum number of jobs necessary to constitute a 'significant number.'"). The Social Security Act itself states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . "[W]ork which exists in the

---

²(...continued)
social security laws.

8 - OPINION AND ORDER

national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (emphasis added). Thus, the VE's testimony that there were 356,000 jobs in the national economy and 560 jobs locally constitutes a "significant number" and satisfies the Commissioner's step five burden. See, e.g., Hoffman v. Astrue, 2010 WL 1138340 at * 13-15 (W.D.Wash. Feb. 8, 2010)(9,000 jobs nationally and 150 jobs locally constitutes "significant number").[3]

4.      The ALJ's Credibility Determination

Claimant asserts that the ALJ failed to give sufficient reasons to reject her subjective complaints. Where, as here, there is "objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" supported by substantial evidence. Carmickle v. Commissioner, 533 F.3d 1155, 1160-61 (9th Cir. 2008).

Here, the ALJ dedicated three pages of his decision to a thorough discussion of the evidence and his reasons for discounting claimant's credibility. The ALJ's credibility determination is supported by substantial evidence and will not be disturbed by this court.

---

[3]     The issue claimant raises in her Reply Brief concerning "simple work" is not persuasive and does not affect the validity of the VE's testimony or the ALJ's decision.

CONCLUSION

Based upon a review of the record, the Commissioner's decision denying claimant's applications for DIB and SSI benefits is supported by substantial evidence on the record as a whole and is, therefore, AFFIRMED.

DATED this 3rd day of May, 2010.

    /s/ Robert E. Jones
    ROBERT E. JONES
    U.S. District Judge